Good morning your honors, Raymond Thomas for Appellant Tenet Healthcare. Let me start by just briefly addressing a number of things that this case does not involve. This case does not involve number one, whether there was an agreement to arbitrate, it is simply an issue as to what was arbitrable. Which as the court is well aware makes a tremendous difference in the analysis. Secondly this case doesn't raise any of the controversial issues surrounding arbitration, which this circuit and others have addressed. This does not involve number one, an arbitration clause imposed on an employee as a condition of employment. It likewise does not involve an arbitration clause involving a civil rights claim or a jury trial has been waived. It doesn't involve any of those sorts of issues. This simply involves a dispute that has arisen between a former executive who had sold his company regarding his supplemental executive retirement plan. So the impact of that I believe is that this case simply gets analyzed under the Steelworkers Trilogy. Counsel, it seems to me that there's kind of a two part analysis and let me state what makes sense to me and you can tell me where I've gone wrong. It seems to me at step one the issue is the scope of the release in the severance agreement. And for the purposes of that we can assume or the arbitrator would assume that the SERP claim is perfectly valid. It's just a question of whether it was released. And that seems like a classically arbitrable question. Assuming, however, that the arbitrator would reach the conclusion that that claim wasn't released, it looks to me like the party's agreement and that which it incorporates by reference reserves that out to be litigated. So if the arbitrator would say, here's a claim, it was released, end of case. Here's a claim, it wasn't released, go forth and litigate that in court. What's wrong with that? Well, not surprisingly, I agree with the first part of the analysis and indeed it's an argument that we made to the district court. And that is without question the issue with respect to the release and the scope of the release is arbitrable. And by some sleight of hand, somehow we've lost that in front of the district court on this analysis. It's somehow because it's an affirmative defense and somehow intertwined that we've lost that clear right to arbitrate. So I agree, Your Honor, that that issue with respect to the release is clearly arbitrable and should have been ordered to arbitration. But let's assume that the arbitrator concludes after the full arbitration that this SERP claim was not released, it's a live claim. Then tell me why that claim, assuming it's alive, isn't one to be decided in court. Well, that's why I was making reference to the Steelworkers Trilogy, which was the burden, the hill that has to be climbed by both the district court and Mr. Heinemann is that they have to show with positive assurance that this agreement is not even susceptible to an interpretation that would require arbitration and that all doubts, any doubt even on that subject, would have to be resolved in favor of arbitration. So that's a very, very, very — But where does the doubt come from once you get to Judge Graber's point? Well, I don't think there — in my view, there isn't a doubt. But let's put the best face on it for the appellees and the appellee, and that is let's assume there is any doubt, there's a doubt raised by the fact that the — I'm trying to go in the other direction. The severance agreement incorporates the FTP, and the FTP accepts ERISA claims. So what's the argument for why you would argue the merits of the — you would arbitrate the merits of the ERISA claim? I don't think it's quite that simple. I think what the FT — first of all, the severance agreement makes reference to any dispute. And it says simply that if there is a dispute regarding an unreleased claim or a future claim, that it uses these words. It will be submitted and or resolved, submitted and or resolved in accordance with the FTP. Right. And the FTP says that you resolve an ERISA claim by going to court. No, it doesn't say that. It simply says when you talk about submission and resolution, you're talking about process. I think it's equally valid to say that that agreement can be interpreted to say that with respect to the process that is to be followed, the submission, the resolution process, that you follow the FTP. Keep in mind that the settlement agreement has no exclusionary language whatsoever. I mean, I would believe in a case like this — It says that. It says it shall be submitted and or resolved in accordance with the terms of the FTP. If the FTP says it should be resolved by going to court, then why — Well, it doesn't say it should be resolved only in court. No, it says it's resolved not by arbitration. What it says is, it says there is a list of excluded issues. That's what it says. ERISA is one of them. An interpretation or construction or application of the plan. Okay. It doesn't say any ERISA issue. It says any ERISA issue that involves construction or application of the plan. How else do you win besides having a plan construed and applied in your favor? Well, let's look to some — as I'm sure this Court's aware, we deal with all the time with issues of 301 preemption and ERISA preemption. And what is the scope of that? And this Court has ruled over and over again with respect to, say, preemption of a state FEHA claim that makes reference to a collective bargaining agreement that has to be read or looked to, simply having to refer to the plan to calculate damages, simply having to refer to the plan. This arises out of it. It's not just a reference. That's what your claim is, it seems to me, that this CERP plan should be — that it should be applied with this — what's the proper word? Particular start date for employment rather than the actual start date for employment, the negotiated date, I guess I would call it. But doesn't the Court find it curious that nowhere in the district court opinion and nowhere in any of the appellee's papers are you presented with a provision that needs to be interpreted, construed, or applied? You're not. Indeed, if you take a close look at the complaint, it appears to be based almost, if not entirely, primarily upon representations that were made to Mr. Heineman, not what the plan says or how it's applied. It's based upon representations. Well, it is how it's applied. It's whether he's going to get the money or not. That's how it's applied, right? Well, but let's think about that. Does that mean that any time that somebody would just have to refer to the plan to make a calculation? Refer to the plan. He is asking for money under the plan. He is asking them to apply the plan to him and give him money. I don't mean the word apply the plan. When you say apply the plan and give him the money, we're talking about what's taken out of it as an excluded issue. If you look at the FTP alone, it's a question regarding construction or application of the plan. You haven't been pointed to any provision that has to be construed or applied. Sure, because there's a calculation under the plan that deals with length of employment, and the question is how that, quote, applies when a person's negotiated start date is not the same as their actual start date. How do you? But if you look at the complaint, that's not exactly what's alleged. What's alleged is representations were made. Is that the substance of the claim? Is that the substance of the substantive dispute, though? I think the substance of the complaint, if you read the complaint, appears to be from reading it that he was promised certain things orally, and he received certain representations in writing about what his start date would be. They sound to me, if you look at the complaint, completely extra and outside of the CERP itself. It's only if you take those representations and make those applicable that you would then have to go to the plan for this mechanical calculation. So I think there is really you have been pointed to nothing. There's nothing that's in the record that indicates a provision that has to be construed by an arbitrator. We're simply talking about application, I mean a damage calculation. But even if we were to agree that maybe that reading might be a better interpretation than the one that we've put forward, or maybe it's even the best interpretation, that's not really the role of the district court or this court at this level to determine whether this is subject to arbitration. You have to be able to say with positive assurance, resolving all doubts, that there is no doubt that this was meant to be excluded. And I believe that that's very difficult to say, given the fact that this agreement says that any disputes are going to be subject to arbitration and that this exclusion by incorporation somehow trumps what appears to be the clear intent of the parties. Clearly, if it had said subject to the exclusions in the FTP, maybe. OK, maybe. But that's not what it says. It says will be submitted and resolved in accordance with the terms of the FTP. You want to stay for a moment? Yes, thank you. And we'll hear from the other side. Please, the court. My name is Brad Schleyer, and I represent the appellee Jeff Heinemann. Let me just address some just basic points based on your questions, and then I think I have to go back to the issue that I think was troubling Your Honor, was whether we have to have two separate proceedings here in this case. But first let me just talk a little bit about the FTP itself and the language of the severance agreement. I think it's important. It clearly says that the questions as to the scope of the agreements are arbitrable. So what are we doing here? Why isn't this something that gets sent to arbitration? And if people are unhappy with what happens there, they can come back. The decision has to scope. They can come back, and then that will be another case for another day, another filing fee we collect. Why isn't it a simple, complete, 100% answer to this whole conundrum? Arbitrability is arbitrable. It shouldn't be here at all. We shouldn't even be talking about it. I guess in general, if you read the agreement itself, and I think the language we talked about before, it doesn't just say that any dispute will be submitted and resolved in accordance with the terms of the FTP. Any dispute over the validity, enforcement, scope, breach, or interpretation of the agreement, that sounds pretty broad to me. Why isn't that exactly what you want us to be doing, and that the agreement says arbitration has got to do? Why isn't this a complete answer to any of this stuff? We don't look at it because the very question, the very things you want to talk about are things that the arbitrator needs to decide. Well, Your Honor, I think that there's an and there, and I think you read the statement. What's the word and? It's whether you did the scope, breach, or interpretation of the agreement, and any dispute regarding unreleased claims or future claims. Well, maybe there are also other things that are arbitrable or not, but until somebody construes the agreement, and that is the person who is vested with the power to construe the agreement, that's the arbitrator, we don't know what that other stuff is because we don't get to do it. The agreement says the arbitrator gets to do it, not federal judges, arbitrators, and so all the other language that you want to have us look at, including the stuff after the end, falls within my understanding of what scoped means. Scope, validity, enforcement. I don't see how you get out of this. I am completely baffled. Okay. What does it say? And, Your Honor, I guess our argument has always been that the determination of what is arbitrable or not arbitrable has been the province of the courts under the FAA. I know that's been your position, but I don't understand where you come up with this position when the agreement clearly says the arbitrator does it. I know you want it to be that way. I know you've sort of argued, you've got a brief full of stuff, but I don't get it. It is just plain sort of English. It says this very thing that you've been talking about belongs to the arbitrator, and I don't know how we get off talking about it. But that's not what I'm talking about. That's what their position has been. I'm the one who brought a claim. I'm asking you why they're not right. You want to dispute what is arbitrable. You want to dispute what belongs in court and what doesn't. That very issue is relegated to the arbitrator. You can talk about it all you want, but you just can't talk about it to the federal judges. You have to talk about it to arbitrators, because that's what the agreement ‑‑ I mean, that's ‑‑ I don't get it. And I guess my position has been throughout this is that initially, as I said, that the decision on whether it should be arbitrated or not is something that is determined by the courts, and then secondly ‑‑ I know that's your position, but what I'm asking you is where do you come up with this position? What support do you have for this position? Give me either language in the agreement or a case or a statute or some authority that ‑‑ I realize that's what you'd like it to be, but I don't see where it comes from. It says scope, scope arbitrator, scope arbitrator, all the stuff you want to talk about. And I understand that, Your Honor. And what is your counterargument? And there is ‑‑ and to be honest with you, Your Honor, which I hope I'm always at, there are no cases out on this. I mean, we both, as you can see, this is a briefing. There are no cases. Do you have a statute? No, there are no cases or statutes. Do you have language? No case on what? I mean, there's a general rule that says that arbitrability is not for an arbitrator unless it's clearly committed, but there's a question about ‑‑ but then there's a definition of what's arbitrability anyway, and the Housam case seems to make it pretty narrow. That is that most things that have to do with whether something is going to be arbitrated is not, quote, arbitrability. And in this instance, it doesn't particularly appear that we really do, at least at the first juncture, have an arbitrability issue at all. We have a question of, as Judge Kuczynski has been saying, that at least some set of something here is committed in the first instance to the arbitrator by the ‑‑ What is it you want us to decide as an arbitrability question? What I want you to ‑‑ I believe that none of this should be arbitrated. I think the case law where people have brought up defenses and, as I say, affirmative defenses, the courts have regularly stated in the ‑‑ What you're defending is exactly what the district court did, essentially, which is that we go to the bottom, we say an ERISA claim isn't arbitrable, and, therefore, the question of whether there's a waiver isn't arbitrable either, even though the one thing this agreement seems clearly to say is that the waiver is arbitrable. The waiver ‑‑ oh, the waiver agreement itself. The release. In other words, take us back to what I said initially. The first issue is whether even assuming that you did have at one time a valid claim for these additional CERT benefits, without having to think at all about the meaning of ERISA or the application of ERISA, we'll assume that you're correct. Nonetheless, was that claim released in exchange for consideration? That seems to me to be clearly within the contemplation of this agreement, within the seventh agreement, the meaning of the release, the scope of the release. And, again, Your Honor, that was back to the case law that we had cited, whether it was Cherone where the courts in the Ninth Circuit had talked about the fact that you may have some gateway issues, and I think they talked about the Howsam case from the Supreme Court. The gateway issues seem to be subsumed and controlled by where is this claim going to be heard. But it's not a gateway issue because if you released the claim, that's the end of everything. Well, the same thing in the Howsam case. I think a gateway issue could, well, in the, was it Cherone or the, was it the Williams case, the case is res judicata, which is in a separate. Was there a separate agreement to arbitrate anything having to do with res judicata in Cherone? I'm sorry. It was here we have a separate agreement. Correct. A supervening agreement to arbitrate anything having to do with whether all claims have been released. Right? There was no parallels, I recall, in Cherone. Cherone, there was no separate ascertainable agreement to arbitrate that particular issue. No, I agree with you. All right. Here we have that. We have a specific agreement to arbitrate that issue, the release issue. And how could we not send at least that to the arbitrator? Well, as I said, Your Honor, I mean, our reliance was on those cases. If you tell me that I'm wrong, that I'm wrong and I'll have enjoyed my trip up here and my ten minutes in printing. While you're here, it seems to me, and counsel has sort of heard our concerns and views, this is a good time for counsel to get together and maybe talk about settling this case. We have mediators here in the building who are trained at this kind of thing. Would counsel entertain that? And we could do first submission for a bit and you can see what you can work out. Well, Your Honor, to be honest with you, probably about three weeks ago I had made some overtures to do that. There's some issues out there that Mr. Heineman is involved in assisting Tenet with some litigation, and I think there's some concern about having this resolved in the midst of him being a witness for Tenet in some litigation. But we have talked about it briefly, and, you know, I'm one of those people that's always up for trying to get cases resolved. Would you like us to do first submission for a week to see whether or not you can work something out? If you ask the clerk's office here for our mediators, yes. Yes, counsel is correct. There's a particular issue where I think it would be inappropriate before Mr. Heineman testifies for us to follow up on the court's suggestion, but I think it's certainly something that we would generally be interested in doing and I certainly would reject that. When is Mr. Heineman testifying? It is deposition Thursday. We could defer for two weeks. And while you're in the building, why don't you contact our mediator team? They're very good. They've settled even mediating death cases, capital cases, so you know that they must know what they're doing. And I think this is the kind of case where it might well be helpful. We'll defer submission for two weeks. You've heard what our thinking is, and that should help you, or at least what our questions and doubts are, and I think that should help you try to reach a agreement. So we'll defer submission for two weeks. If we hear nothing further from either the mediators or from the parties, we will then order the case to be decided. If you need more time, send us a letter, or if you're working with a mediator that has a mediator, send us an internal letter asking for more time, and we'll be certainly willing to give it so long as the parties are progressing towards possible settlement. Okay. Thank you, Your Honor. Thank you very much. We'll defer submission in this case for two weeks or until further notice. Thank you. We are now adjourned.
judges: Kozinski, Graber, Berzon